**MILLERS NATIONAL INSURANCE COMPANY; John Caulfield, dba Caulfield Trucking; Donald Preston Thurman, Plaintiffs–Counter–Defendants–Appellants,**

**and**

**Interstate Truck Underwriters, Inc., Plaintiff–Counter–Defendant,**

**v.**

**AXEL'S EXPRESS, INC., Defendant–Appellee,**

**Fireman's Fund Insurance Company, Defendant–Counter–Claimant–Appellee.**

No. 87–6606.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1988.

Decided July 1, 1988.

Charles M. Farano and Jeffrey L. Farano, Farano and Kieviet, Anaheim, Cal., for appellants.

Kurt A. Moll, Rigg and Dean, Santa Ana, Cal., for appellees.

Before HUG, KOZINSKI and THOMPSON, Circuit Judges.

HUG, Circuit Judge:

This is an appeal from a dismissal for lack of jurisdiction. The sole issue is whether a federal district court has federal-question jurisdiction over a dispute between two insurance companies for coverage of an accident involving an interstate motor carrier regulated under federal law. We affirm.

## FACTS

On June 16, 1985, Donald Thurman was driving a truck owned by Caulfield Trucking ("Caulfield") and leased to Axel's Express, Inc. ("Axel's"). Axel's was a common carrier authorized by the Interstate Commerce Commission ("ICC") to engage in interstate commerce. While he was driving, Thurman fell asleep, and the truck hit a parked vehicle, causing serious injuries to the occupant, James Gagner. On June 3, 1986, Gagner filed a complaint for damages in state court, naming Caulfield, Thurman, and Axel's as defendants.

At the time of the accident, Axel's was insured by Fireman's Fund Insurance Co. ("Fireman's"); and Caulfield and Thurman were both insured by Millers National Insurance Co. ("Millers"). The lease under which Axel's was operating stated, "The Contractor [Caulfield] shall hold Carrier [Axel's] harmless from any loss or damage incurred by Carrier as a result of the negligent operation, maintenance, or best use of the vehicles.... The Contractor shall maintain continuous insurance coverage sufficient to hold Carrier harmless."

A settlement was reached in the *Gagner* action. Fireman's contributed $450,000 towards settlement on behalf of its insured, Axel's. Millers contributed $200,000 on behalf of its insureds, Caulfield and Thurman. The settlement was premised on the reservation of each party's rights and obligations regarding coverage and liability, to be determined at a later time.

On October 10, 1986, Millers filed a complaint in federal district court against Axel's and Fireman's for damages and a judicial declaration that Axel's was exclusively liable for the damages claimed by Gagner and that, as Axel's insurer, Fireman's was responsible for primary coverage of the Gagner claim. Fireman's counterclaimed,[1] requesting a judicial declaration that Caulfield and Thurman were exclusively liable for the accident and that Millers was responsible for primary coverage of the loss and Fireman's responsible only for excess coverage.

The district court dismissed the action for lack of subject matter jurisdiction. There was no diversity of citizenship between the parties, and the court did not find the existence of a federal question sufficient to invoke jurisdiction under 28

---

**1.** Though Fireman's contested federal jurisdiction over the action brought by Millers, it counterclaimed in the event that the court found jurisdiction. In its counterclaim, Fireman's stated that it did not concede the jurisdictional issue.

U.S.C. § 1331 (1982).[2] This appeal was taken by Millers. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982). The sole issue on appeal is whether the district court had jurisdiction over the dispute. The existence of subject matter jurisdiction presents a question of law reviewable *de novo*. *Peter Starr Production Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

## DISCUSSION

Millers argues that jurisdiction exists because the determination of insurance coverage rests on which party is primarily liable for the accident. This underlying liability, Millers contends, is governed by federal law. While Millers acknowledges existence of the indemnity clause in the lease, whereby Millers' insured agreed to hold Axel's harmless for liability, Millers disputes the validity of this indemnity clause based on federal regulations. The argument appears to be that federal law governs the question of liability for the accident, and any indemnification agreement which would allocate liability contrary to federal law is not valid.

The truck involved in this case was a leased vehicle engaged in interstate commerce, regulated under 49 U.S.C. § 10101 *et seq.* Under 49 U.S.C. § 10927, a motor carrier such as Axel's may not operate in interstate commerce unless it files an insurance policy or other type of security in compliance with applicable regulations. The security must be sufficient to pay "for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles" subject to regulation. 49 U.S.C.A. § 10927(a)(1) (1988). The purpose of this law is "to assure to members of the public

... that a certificated carrier has independent financial responsibility ... to pay for losses created by its carrier operations." *Carolina Casualty Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 304, 312 (5th Cir. 1978) (discussing section 215 of the Interstate Commerce Act, 49 U.S.C. § 315, which 49 U.S.C.A. § 10927(a)(1) supersedes).[3] Some courts have held, based on the federal statute and regulations, that the carrier is liable for injuries caused by the leased vehicle. *See Grinnell Mutual Reinsurance Co. v. Empire Fire & Marine Ins. Co.*, 722 F.2d 1400, 1404 (8th Cir.1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2155, 80 L.Ed.2d 540 (1984) ("[T]he ICC regulations ... make a carrier liable to the public for negligent acts of the vehicle's driver...."). *See also Rodriguez v. Ager*, 705 F.2d 1229, 1236 (10th Cir.1983). Millers contends that, since Axel's arguably would be liable for the accident under federal law,[4] its insurer, Fireman's, is responsible for primary coverage. According to Millers, this case "arises under" federal law because the determination of insurance coverage follows directly from the underlying determination of liability, which itself is governed by federal law.

In essence, Millers' claim for indemnity is a state law claim. Though its resolution may involve a determination of federal law, that alone is not sufficient to invoke federal-question jurisdiction. We believe this case falls squarely within the Supreme Court's holding in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 3229, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

In *Merrell Dow*, the plaintiffs brought an action in state court against a drug manufacturer, alleging that the drug caused multiple birth defects in a child. In one of the six counts, plaintiffs alleged that

---

**2.** That section states:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**3.** To implement this statutory requirement, the ICC requires the motor carrier to file proof of adequate insurance. The carrier must attach form BMC 90 to the carrier's insurance policy; the form acts as an endorsement, stating that

the carrier's policy provides the required coverage. At the time of the accident in question, Axel's was properly certified by the ICC.

**4.** Millers points out that although Gagner's claim has been settled, the issue of liability between Axel's and Caulfield has not been resolved. The settlement was contingent upon reserving the parties' rights and obligations regarding liability and coverage issues.

the drug was misbranded in violation of the Federal Food, Drug, and Cosmetic Act, ("FDCA") and that such violation constituted a rebuttable presumption of negligence in the state law action. The case was removed to district court.

Denying the plaintiffs' motion to remand, the district court found that federal-question jurisdiction was invoked by virtue of plaintiffs' reliance on the defendant's violation of federal law. The Supreme Court reversed, holding that the case did not arise under federal law. It began its analysis by noting that "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Id.* at 3233. The court pointed to the "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 3235. The Court noted that the federal law in that case (the FDCA) did not create any of the causes of action asserted by the plaintiffs, but rather, the case involved "the presence of a federal issue in a state-created cause of action." *Id.* at 3233. It concluded, "[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331." *Id.* at 3237.

We had occasion to interpret *Merrell Dow* in *Utley v. Varian Associates, Inc.,* 811 F.2d 1279 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987). There we explained, "Under *Merrell Dow,* if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial' federal question" sufficient to confer federal-question jurisdiction. *Utley,* 811 F.2d at 1283.

We found that federal-question jurisdiction did not exist in *Utley.* In that case, Utley brought a state law employment discrimination action against his employer. The case was removed to federal court. In one claim, Utley alleged that his employer dismissed him because of his race, in violation of the employer's affirmative action duties as a federal contractor under a federal Executive Order. He contended that such violation amounted to an unlawful employment practice under section 12940 of the California Government Code, which prohibits employers from discharging employees on the basis of race. Applying the *Merrell Dow* analysis, we examined whether the federal Executive Order upon which Utley's state claim was predicated provided a private right of action. We stated, "Only if the executive order provides Utley with a private right of action against [his employer] in federal court might his complaint raise a 'substantial' federal question permitting ... jurisdiction." *Id.* 811 F.2d at 1284. We found that no such private right of action existed and, accordingly, held that the state claims did not raise a substantial question of federal law sufficient to confer federal jurisdiction under *Merrell Dow. Id.* 811 F.2d at 1286.

We approach this case under the same analysis. The proper inquiry is whether the federal statute involved in Millers' state claim provides a private right of action. Millers' claim is predicated upon federal law governing interstate carriers. We have previously noted that "Congress and the ICC, through authorizing statutes and regulations, intended to impose financial responsibility requirements upon authorized carriers to protect the public." *Planet Ins. Co. v. Transport Indemnity Co.,* 823 F.2d 285, 286–87 (9th Cir.1987). But though the regulations require the carriers to hold insurance to assure financial responsibility toward members of the public, there is nothing in the regulations or the statute that deals with the question of allocating liability between the insurers of an owner and a carrier. *See Grinnell,* 722 F.2d at 1404. We are convinced that Congress, in enacting the statute, did not intend to provide a federal private right of action to insurers of carriers for indemnification against insurers of equipment owners. Because Millers possesses no private right of action under federal law, the fact that federal law might be an element in its

state law claim is not sufficient to present a federal question supporting jurisdiction under 28 U.S.C. § 1331.[5]

The district court's judgment is AFFIRMED.

5. We also reject Millers' argument that jurisdiction is conferred by 28 U.S.C. § 1352 (1982), which provides: "The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States...." Millers argues that the insurance required by 49 U.S.C. § 10927 and 49 C.F.R. § 1043 is a type of security which falls under 28 U.S.C. § 1352. Insurance, however, is not normally thought of as a "bond" as that term is commonly used. Moreover, even if insurance could be thought of as a "bond" as the term is used in section 1352, this is not an "action on a bond." Rather, it is an action for indemnification brought by one insurer against another. This action follows the underlying state court action filed by Gagner. That action resembles, far more than this one does, an "action on a bond."